AT A SPECIAL TERM THEREOF HELD AT WHEELING IN

THE COUNTY OF OHIO, COMMENCING ON THE

SEVENTH DAY OF MARCH, 1879, AND

ENDING ON THE TENTH DAY

OF MAY, 1879.

BROWN *v.* MARTIN *et al.*

Decided April 26, 1879.

Absent, MOORE, JUDGE.

1. A case where the Appellate Court reversed the decree of the court below for error upon a question of fact, and dismissed the plaintiff's bill. (See opinion of Court.)

Appeal from and *supersedeas* to a decree of the circuit court of Greenbrier county, rendered on the 31st day of October 1877, in a cause in said court then pending, in which Tinsley Brown was plaintiff, and O. C. Martin and others were defendants, granted on the petition of said Martin.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

The facts of the case are fully stated in the opinion of the Court.

*A. C. Snyder*, for appellants, relied on the following authorities:

2 Rob. (old) Prac. 307; *Id.* 329; 29 Iowa 258; 3 Gratt. 518; 67 Pa. St. 82; 5 Am. Rep. 412; 1 Story Eq. §§387, 390, 391; 17 Mo. 282; 1 Harris 622; 17 How. 612; 1 Gray 75; 3 Leigh 597; 1 Atk. 463; 7 Johns. Ch. 150; 4 Rich. Eq. 105; 10 Barr 428; 2 Gratt. 262; 6 Rand. 618; 14 Gratt. 1; 2 Rand. 275.

*J. W. Davis*, for appellee, cited the following authorities:

Smith's Lead. Cas. (ed. 1866) 1084; Williams' Pers. Prop. 499; 3 Bibb 278; 1 Lit. 318; 1 Tuck. 348, 349; 3 Munf. 68; 5 Leigh 646; 9 Leigh 293.

HAYMOND, JUDGE, delivered the opinion of the Court:

This is a cause in equity. It was heretofore before this Court before the defendant, O. C. Martin, was made a party defendant. 7 W. Va. 678. Judge Paull delivered the opinion of the Court; and on pages 679 and 680 he states substantially the evidence then appearing in the record, being the depositions of three witnesses taken by the plaintiff. On pages 680 and 681 Judge Paull in delivering the opinion of the Court, after stating the substance of the evidence, says: "In the absence of all evidence to the contrary, or of any evidence whatever in support of the answers, we think the assignment to the plaintiff is sufficiently established, as also notice of this assignment to the maker thereof, to wit, defendant Noel, by the depositions found in the record. As before

stated, there is no evidence on the part of the defendants, and they claim no affirmative relief. The defendant, Noel, proves his knowledge of the assignment of the bond in 1861; that he had notice thereof at that time, and that said bond was not paid until after this suit was brought. With this statement of the case and the evidence, we think the decree of the circuit court made on the 15th day of December, 1871, dismissing the plaintiff's bill, is erroneous. It seems, however, from a decree entered in this cause, on the 12th day of April, 1872, that there is a judgment on the law side of the circuit court of Greenbrier county, in favor of O. C. Martin, assignee, &c. *v.* N. W. Noel, and that by consent of parties the money to satisfy the same should be paid by the sheriff to J. W. Davis, to be held subject to the order of the court in this suit; and the plaintiff's bill having been dismissed, it was adjudged and ordered that said judgment be absolute, and said O. C. Martin be permitted to receive the money collected on the same directly to his own use and benefit. We have seen that it was error to dismiss the bill, and it was consequently error to make the foregoing order without first making the said O. C. Martin a party in this cause, he now appearing to be a party directly interested in the subject-matter of this controversy. The decree of the circuit court, made on the 15th day of December, 1871, and the decree of said court made on the 12th day of April, 1872, are reversed and annulled with costs against the appellees, P. B. Harrah and N. W. Noel, and this cause is remanded to the circuit court of Greenbrier county, with leave to the plaintiff to amend his bill, and make additional parties, and for further proceedings," &c.

The decree of this court reversing the said decrees of the court below, and remanding the cause, was made and entered by this court substantially in accordance with the conclusion of the opinion of Judge Paull in relation to reversing and remanding with leave to plaintiff to make new parties.

On the 12th day of October, 1874, the mandate of this court was received by the clerk of the circuit court of Greenbrier county, and entered of record according to law. And afterwards, on the 31st day of October, 1874, the cause was again docketed in said circuit court, and the plaintiff by leave of the court filed his amended bill in the cause making said O. C. Martin a party thereto, in which he charged that since the institution of this suit the said O. C. Martin procured the bond set up and described in the original bill to be assigned to him, and that he took the assignment of said bond *mala fide;* that he knew before and at the time of the assignment that the bond had been assigned to plaintiff, and of right belonged to him, &c.

Afterwards, on the first Monday in May, 1875, the defendant, O. C. Martin, filed at rules his answer to said amended bill, which is substantially as follows:

" This respondent, for answer to so much of said bills as it is material for him to answer, says that some three or four years since he purchased from his co-defendant, P. B. Harrah, a bond executed by N. W. Noel to G. Knapp for $128.14, dated February 28, 1861, and due on demand; that at the time of said purchase he paid said Harrah for said bond, and the said Harrah assigned the same to respondent. A copy of said bond is herewith filed as a part of this answer marked Exhibit "X ;" that after he purchased said bond as aforesaid, he instituted suit thereon in this court, recovered a judgment at the October term, 1871, against said Noel, and sometime in the year 1872, subsequent to the month of May in that year he collected said judgment from said Noel as he was directed by an order of the court in this suit. Respondent avers that he purchased said bond from said Harrah for value and in good faith, and that he paid said Harrah for the same at the time of the purchase and assignment aforesaid ; that he had no notice at that time that the plaintiff, Brown, had or pretended to have any claim to said bond ; that there was no assignment from the ob-

ligee, Knapp, to the plaintiff on said bond; that said Knapp received no part of the consideration for said assignment to respondent, but the entire transaction was between respondent and said Harrah and the whole consideration was paid by respondent to said Harrah for said bond. Respondent positively denies that he had any knowledge of any claim of the plaintiff to said bond at the time of said assignment to him. He denies that the defendant, Knapp, owed him at that time, or that said bond was taken in discharge of a debt due to him from said Knapp; he denies that he bought said bond either directly or indirectly from said Knapp; he denies that at the time of said purchase he knew that plaintiff, Brown, had sued Knapp and Harrah for said bond or its proceeds. And respondent denies each and all of the allegations and charges in the plaintiff's bill which are not expressly admitted in this answer," &c.

The Exhibit " X " filed with the answer is as follows:

" $128.14. On demand, I promise to pay G. Knapp the just and full sum of one hundred and twenty-eight dollars and fourteen cents, for value received of him, as witness my hand and seal this 28th day of February, 1861.

" (Signed)     N. W. NOEL. [Seal.]"

The following are the endorsements appearing thereon:

" I, G. Knapp, have assigned the within to P. B. Harrah."

" I assign the within to O. C. Martin without recourse.

" PHARES B. HARRAH.

"*December* 1, 1870."

Additional depositions were taken and filed in the cause; and afterwards, on the 13th day of October, 1877, the said circuit court made and entered the following final decree in the cause, to-wit:

" This cause came on further to be heard this 31st day of October, 1877, upon the papers formerly read, upon the mandate and opinion of the Supreme Court of Ap-

peals, upon the amended bill of the plaintiff, upon the process thereon regularly executed upon all the defendants; upon the answer of Obadiah C. Martin, and general replication thereto; upon the amended bill taken for confessed as to the defendants, except O. C. Martin; upon depositions of witnesses; upon exceptions thereto by the plaintiff; and was argued by counsel. Upon consideration whereof, it is ordered, adjudged and decreed that the bond executed by the defendant, N. W. Noel, on the 28th day of February, 1861, to Gamaliel Knapp for the sum of $128.14, payable on demand, be for the purposes of this suit set up as a lost bond, the right whereof is in the plaintiff, and the principal and interest thereon now amounting to the sum of two hundred and fifty-six dollars and twenty-eight cents ($256.28). And it appearing that a decree was taken against defendant Noel in favor of O. C. Martin for the said debt, and that after the rendition of the decree, and before the same was suspended by appeal or otherwise, the said Noel paid the same to defendant, O. C. Martin, no decree can be rendered against Noel, but it is ordered, adjudged and decreed that the plaintiff, Tinsley Brown, recover against the defendant, Obadiah C. Martin, the sum of two hundred and fifty-six dollars and twenty-eight cents, the amount of said bond, with interest from this day, and his costs of this suit herein by him expended and incurred since the filing of the amended bill making Martin a party, including an attorney's fee of $15.00; and the plaintiff, Tinsley Brown, shall recover against the defendant, Phares B. Harrah, his costs incurred and expended by the plaintiff herein before the filing of the amended bill against O. C. Martin ; and the plaintiff may have executions for said sums."

From this decree the said defendant, O. C. Martin, upon his petition and assignment of error obtained an appeal and *supersedeas* thereto from one of the judges of this Court. And the question now to be determined on review is, whether there is sufficient error in said decree

prejudicial to the defendant, Martin, to authorize and require this Court to reverse the same in whole or part.

This suit was originally brought against N. W. Noel and Gamaliel Knapp and the original bill was filed against them. The suit was commenced on the 6th day of December, 1869. Knapp in his answer, among other things, says : " The plaintiff positively refused to take the said bond as his own, and no assignment whatever, either by writing, as charged in the plaintiff's bill, or otherwise, was ever made by respondent to plaintiff, of the said bond;" and he further says, that he denies the bond is owing to, or ever was the property of, the plaintiff, " but says that the bond was the property of the respondent until some time in the fall of 1867," when he assigned it to Phares B. Harrah in payment of " a debt due said Harrah, to whom the said bond is now owing, and in whose possession it now is."

He also says in his answer, that a few days after the date of the bond he " bought a horse of the plaintiff and put the said bond into the hands of the plaintiff, under an agreement that he was to act as the agent of respondent in endeavoring to make an arrangement with one William Ford, by which said Ford would take the said bond and account for its value to the plaintiff, who was then to credit respondent with the amount of said bond on the debt due for the horse purchased of plaintiff by respondent ; but if the arrangement with Ford could not be perfected, then the plaintiff was to return, and respondent held himself bound to accept, the said bond on the refusal of Ford to take it as his own."

He further states in his answer that " some time after the plaintiff had received the bond on the conditions aforesaid, he told respondent that he had failed in making the proposed arrangement with Ford, and that respondent would have to take back the bond, as respondent under his contract had agreed to do; but plaintiff not having the bond with him, respondent subsequently called on him at his house, and told him that as he was bound to

receive the bond back, and had been so requested to do by him (the plaintiff), he, respondent, wished to get it then, thereupon the plaintiff without expressing any objection delivered the said bond to respondent."

On the 18th day of April, 1870, it appears the plaintiff appeared in court and offered to file an amended bill, and the defendant, Knapp, objected to the filing of the same, and the court overruled the objection and permitted the amended bill to be filed. This amended bill makes Phares B. Harrah a party defendant to the cause, and charges that said Harrah has possession of and claims to own the bond for $128.14, executed by defendant Noel to defendant, Knapp, and the same described in the original bill, it also charges that Harrah got possession of and holds said bond fraudulently; that he never paid any valuable consideration for the same, and that he now holds the same in trust for defendant Knapp. And he charges that on said bond there was a written assignment for value received to plaintiff, and that the bond, when produced, will show the assignment, and he calls for the production of the bond.

The defendant Harrah filed his answer on the 5th day of October, 1871, in which he says: "He received from the defendant, Knapp, a bond executed to said Knapp by N. W Noel for about $128.00, but that he has since assigned said bond and delivered the same to the assignee;" he denies "that he received said bond fraudulently, as charged in plaintiff's amended bill, or that he ever held the same in trust for the defendant, Knapp; but on the contrary avers, that he paid valuable consideration to defendant Knapp for said bond, and at the time of its transfer to him he did not know that the plaintiff claimed, or ever had possession of said bond at any time; and further he says that there was no written assignment of any kind on the said bond, when it was transferred to him by the defendant, Knapp; the transfer of said bond to this defendant was *bona fide* and for valuable consideration without notice of plaintiff's claim against him either for the surrender of the bond or its value."

I will not state the substance of all the evidence taken and filed in this cause prior to the former decision by this Court, as that appears in part in the opinion of Judge Paull reported in 7 W. Va.; but will content myself with stating the substance of the depositions taken and filed since that time, and the substance of part of the former evidence.

Ballard Caraway, a witness for plaintiff, states that he carried for Knapp, he thinks to the Salt Sulphur Springs, or somewhere in Monroe county, the bond in question to Noel, to get the money on; that he thinks there was no assignment on the bond at that time, but he does not state when he so carried the bond.

Anderson Scott, another witness for plaintiff, says Knapp told him that he had bought a brown horse of plaintiff, and given him a note on Dr. Noel for $100.00, and some other cash paper. That Knapp came to his (witness's) house, and he and Knapp went up to plaintiff's together, and after they had been there some time, the plaintiff being very sick in bed, and it came up about the Noel note, and Knapp made this declaration: that if Mr. Brown would let him have Noel's note, he thought he could make part of the money. He (Knapp) said that there was some property that he thought he could get hold of to make the money. Plaintiff told his sister to go and get his pocket-book. Plaintiff opened it, and took out a note and gave it to Knapp, and told Knapp that he wanted the money as soon as he could get it. On cross-examination he further says plaintiff said he wanted the money, but he (witness) did not know who it belonged to, he did not know whether it was Noel's note or not, but it was his understanding it was.

Plaintiff also again took his own deposition, in which he says: "The bond in controversy was traded to me by Knapp for a certain horse; and further I deny the statement of said Knapp in his deposition in regard to me borrowing the said horse that he traded me the said bond for, and state that he afterwards swapped me said

2

1879
Special Term.

Brown
v.
Martin *et al.*

horse for a roan mare, and I gave him $60.00 as boot between the said horse and the roan mare." On cross-examination by defendant, O. C. Martin, he says he did not go to Martin's house and make a proposition to Martin not to make any defense in the suit, and let him get judgment against Martin, and then for Martin to go against Knapp and Harrah. That to the best of his recollection he told Martin at his house that he thought he would know the bond, and that it was assigned on the back. "I did go to settle with Knapp, and we fell out, and we did not make the settlement."

Defendants took the deposition of ·A. Hutsonpiller, who says he saw no assignment on the Noel bond when he had it in 1862, or the year 1862. He also says there was no assignment on the bond in 1865 to plaintiff, nor any other person. He also says he did not know of any claim set up to said bond at that time except the lien of another person and himself.

Defendant O. C. Martin took his own deposition which is as follows:

"1st question by defendant Martin by counsel—State what interest you have in this suit.

"Answer—I am one of the defendants.

"2d, by same—State when and how you became the owner of the bond or note in controversy in this suit, and what you paid for it?

"Answer—I traded for it, I think, in December, 1870, as well as I can now remember—however the assignments on the note will show—and I paid the full value for it, or what it called for, and the interest.

"3d, by same—State whether or not you had any notice of any claim to said bond on the part of the plaintiff at the time you purchased it, or at any time before you traded for it.

"Answer—Mr. Brown at one time said that he intended, at some future time, to bring suit for it, or had brought suit for it—I do not remember whether before or after Mr. Brown said it had been assigned to him at

1879
Special Term.

Brown
v.
Martin *et al.*

the bottom, and I showed him the note ; he said it was assigned to him across the end, where it had been torn off ; and in another conversation he wanted me to lie still and let judgment come out against me, and then for me to proceed against Harrah and Knapp ; I told him I would not do it ; I would fight him to the last ; that I would have no redress against them ; and in another conversation he said that Mr. Way had sworn false in his deposition ; I told him I· did not know anything about it ; and then in another conversation I told him that the deposition of Way was gone ; he said that Mr. Snyder had taken· it out because he knew that he had sworn false ; and in another conversation about three weeks since he said Mr. Snyder had taken that deposition out, and I asked him how he knew, and he said Mr. Davis told him so, for he, Way, had sworn thus, ⋈ ,— crossing his fingers as he made the remark.

"4th, by same—State from whom you got said bond, and whether or not there was any assignment on it to plaintiff at the time, or anything suspicious about its appearance.

" Answer—I got the bond from Phares B. Harrah, and it was assigned from Knapp to him, Phares B. Harrah, and by said Harrah to me, and no mark of any assignment to the plaintiff at the date of the assignment to me ; and I could see nothing that looked suspicious to me at the time of the transfer to myself.

"5th, by same—State whether or not you had the bond at the time you had the first conversation, above stated by you, with the plaintiff,—that is, the conversation in which the the plaintiff said he intended to sue or had sued for the bond.

"Answer—I had traded for it but had not gotten the note into possession at that time.

"6th, by same—Was it after or before that time that you showed the bond to plaintiff, as above stated by you ?

"Answer—It was after I had gotten the bond into my

possession that I showed it to the plaintiff, and that took place after the conversation between us, in which the plaintiff said he had sued, or intended to bring suit, for the bond.

"7th, by same—State whether or not, at the time you traded for the bond from Harrah, you had any conversation with the plaintiff, Brown, about the bond, or had any notice that he claimed to own the bond.

"Answer—I do not recollect that I had more than I have stated in my previous answers; and, to the best of my recollection, at the time I traded for the bond I had no notice of the plaintiff, Brown's, claim. He spoke to me a short time thereafter upon the subject; and I added that I should not have traded for it if I had thought there would have been any lawsuit or difficulty about it, more than a lawsuit for its collection.

"8th by same—State whether or not there is any agreement between you and Harrah, or you and Knapp, by which you are to account to either of them for the proceeds of the bond if you succeed in this suit. State whether there is any arrangement of any kind between you and said persons about said bond.

"Answer—I have accounted to said Harrah for it, and I have no agreement on the subject with Knapp, and I have no further account to render to either of them for the said note."

O. C. Martin also took the depositions of the following named persons who testified substantially as follows:

John M. Holland states, that in September, 1866, said Knapp gave him a note executed by N. W. Noel to said Knapp for $128.14; that he took the same to the State of Virginia, where it remained about twelve months; that he then brought said note back and gave it to said Knapp, having failed to collect any portion of the same. There was no assignment upon it whatever. There was no claim set up to said note while in his possession.

James S. Clay testified, that he was working for said Knapp, and that he had bought a horse from plaintiff and

gave him Dr. N. W. Noel's bond for $128.00, and some cents which he Brown was to use or return to Knapp in a short time; that after Knapp had the horse in possession some time, the plaintiff came and borrowed the horse and never returned him to my knowledge.

Said Gamaliel Knapp testified, that he had a note on Dr. Noel of $128.00 and he thinks some cents, which he loaned plaintiff; that he said it was to pay a debt to Mr. Ford, if it would answer his purpose; that some time after that plaintiff came to him and told him that the note did not answer his purpose; that Mr. Ford would not take it, and that he, (Knapp) must take the note back; that he told plaintiff that was their agreement; that he was willing to take it and he (plaintiff) returned him (Knapp) the note or bond; that plaintiff's sister returned him the bond in his house.

### CROSS-EXAMINATION.

" Did you not trade me that bond for a brown horse?

" Answer—Yes, if it answered his purpose.

" 2d Question—In what way did you pay me for that that horse, if you did not trade me that bond?

" Answer—I loaned Mr. Brown that horse a short time afterwards to work in the wagon, and he kept the horse and sold him, I think, to the North Carolina regiment.

" 3d Question—Did I tell you that I owed Mr. Ford at that time?

" Answer—You did."

William Ford testified, that he got a note from plaintiff on N. W. Noel in payment of a debt due him (witness) on this condition, that if he could collect the same without any difficulty, and if not, he was to return it to plaintiff.

"2d question by defendants—In what year was that note given to you?

"Answer—About the year 1861.

" 3d question by same—What was the amount of the note?

"Answer—About one hundred and twenty-eight dollars.

"4th question—Was there any assignment on the note from G. Knapp to Linsley Brown?

"Answer—I do not know.

"1st question by plaintiff—Did you take this note in full payment of a certain sorrel mare from me?

"Answer—I did to the best of my recollection.

"2d question by same—Did I trade you that note as Mr. Knapp's note or my own?

"Answer—I do not know."

The foregoing is the substance of all the evidence taken and filed since the cause was heretofore remanded by this Court. It is proper that I should here state, in addition to Judge Paull's statement of the substance of the evidence then before the Court, that Samuel Pucket, a witness for the plaintiff, states that he went with the plaintiff to Dr. Noel in 1861, and the plaintiff presented "a note to Dr. Noel that he got of Gamaliel Knapp on said Noel, and the plaintiff claimed to be the owner of the note at the time, and Dr. Noel said he would pay the same in a short time, or as soon as he could; that he could not read writing, and can't say whether the note was assigned or not at that time, and can not tell whether it was a bond or note, but he can read now; that he heard Noel read the note, and that it was the note he gave Mr. Knapp, and in 1862, Mr. Knapp came to Mr. Brown's, when he was sick, and Mr. Brown told Mr. Knapp that he was in need of money, and Mr. Knapp told him if he would give him the note he would try and collect it for him; and Mr. Brown's sister gave the same to him, and that is all he knows about the note."

The plaintiff states in his deposition that it was a bond, to the best of his recollection it was executed to Gamaliel Knapp by Dr. Noel, calling for $128, and some cents; that he sold Gamaliel Knapp a horse and took the bond in part payment for the same, and the bond was assigned to him in writing; to the best of his recollection it was as-

1879
Special Term.

Brown
v
Martin et al.

signed on the face of the same at the bottom of said bond; that he got the bond in the spring of 1861, and shortly after he got the bond he presented it to Dr. Noel for payment; that in 1862 Knapp came to his house, and he was sick at the time with the fever, and he told him that he wanted some money, and he said, that if I would let him have the bond he could make some money for me out of the property; that Dr. Noel had left the country and had left some property behind, and I let him have the bond for collection; that at that time Knapp did not claim the bond; that he never heard Harrah claimed the bond till after the suit was brought; that he has not seen Harrah here to-day; that since this suit was brought Dr. Noel told him the bond was not paid.

Dr. N. W. Noel states in his deposition, that he executed a bond to G. Knapp in 1859, and that to the best of his recollection it was payable on demand; that he saw the bond once after it was executed and in the hands of the plaintiff; that to the best of his recollection there was an assignment on the bond at that time; that the assignment was to the plaintiff, by G. Knapp; that the bond was assigned, to the best of his recollection, at the bottom of said bond; that G. Knapp and F. Harrah came to him and wished him to execute a new bond after he was notified by plaintiff not to pay the said bond.

This court did not in its previous action decide this case upon its merits, certainly not as to the defendant, O. C. Martin, who was not then a party to the cause; and the court then directed said Martin to be made a defendant to the cause, because he was directly interested in the result, and should be heard. The court would hardly have finally decided the cause in favor of the plaintiff and at the same time have directed Martin to be made a defendant, to answer and set up his rights or defenses, if he claimed any, against the plaintiff's demands. This court seemed to have regarded Martin as more than simply a necessary formal defendant. I apprehend there can be no doubt, but that under the circumstances of this

case it was and is competent for Martin to set up and make any defense in this cause upon its merits, which he might have made, had he been a party to the cause prior to the time the same was before this court. The plaintiff seems to have so regarded and treated the cause, for he, as well as Martin, has taken and filed additional testimony touching the merits thereof.

I proceed now to state my conclusions in this case—such conclusions as I feel bound to arrive at from the whole evidence. I think that I am justified from the whole evidence in concluding that the bond in question was assigned in writing by Knapp to the plaintiff in the spring of 1861; and that the bond was at that time delivered by Knapp to the plaiintiff and that the consideration of the assignment of the bond by Knapp to the plaintiff was a horse that the plaintiff then or shortly before sold and delivered to the defendant, Knapp; and that the assignment was written at the bottom of the bond, instead of on the back thereof according to the usual course of business. But I am further of opinion that the said assignment of said bond by Knapp to the plaintiff was not made to the plaintiff, or received by him, as an absolute payment on the price ot said horse, but was received by the plaintiff as a conditional payment, that is to say, it was to be a payment, if the plaintiff could use the note so as to pay a debt he owed to William Ford, and if he could not, then the note was to be returned by the plaintiff to said Knapp, and he, Knapp, was to receive it back from the plaintiff; that the plaintiff failed to be able to use the bond with said Ford, upon the debt he owed Ford, or get the money from Dr. Noel, although Ford received it from him as a conditional payment, that is, if he, Ford, could collect the bond without any difficulty ; that Ford failed to collect the bond and returned it to the plaintiff; that the plaintiff, after he had failed to use the bond in payment of his debt to Ford, and after Dr. Noel had failed to pay him the bond, and after Noel had left that

section of the country, returned the bond to the defendant, Knapp, to enable him to proceed against the property of Noel left behind.·

It does not expressly appear that said assignment was on said bond at the time Knapp received it back from plaintiff; and it does not appear that said assignment was on said bond or in existence at any time after said Knapp received it back as aforesaid; but the evidence tends strongly to prove that the said assignment of said bond was not on said bond after said Knapp so received the note from the plaintiff. If the assignment was on the bond at the time it was received back by Knapp, it must have been known to the plaintiff, and he could have testified to the fact, and also, perhaps, proven it by his sister. The plaintiff has contented himself, however, with simply testifying, that Knapp did assign the bond to him in writing, at the foot thereof, in payment on the price of a horse, &c.

But again Knapp testifies positively as a witness, that some time after he let plaintiff have the bond, the plaintiff came to him and told him that the note did not answer his purpose; that Ford would not take it, and that he must take the note back; that he told plaintiff that that was their agreement; and that afterwards the bond was returned to him at plaintiff's house. The plaintiff was present at the taking of the deposition of Knapp, and afterwards took his own deposition contradicting the evidence of Knapp, as to borrowing the horse from Knapp, &c., but did not in the least attempt to contradict the evidence of Knapp in the respect I have stated. If Knapp had testified falsely in this respect, the plaintiff knew it, and could have contradicted Knapp. Why did he not contradict Knapp in this respect? He did not attack the general character of Knapp for truth and veracity. Why, again I ask, did he not contradict the evidence of Knapp—given in the respect I have stated? He must have known it was material, and if true, fatal to his cause. The reasonable in-

ference to be drawn from the plaintiff's failure to contradict Knapp's evidence under the circumstances appearing is, that he could not contradict it and state the truth. If the plaintiff's own testimony, twice given in relation to said assignment, is closely examined, all he expressly states in relation to the said assignment may be true, and yet the evidence of Knapp, as above stated, may also be true. But Knapp's evidence is somewhat corroborated by the evidence of Ford.

Knapp also testified, that at some time after he had bought the horse, he loaned it to the plaintiff to work in a wagon, and he kept the horse and sold it. It is true the plaintiff in his second deposition denies the statement of Knapp, that he (plaintiff) borrowed the horse, and states that Knapp *swapped* him said horse for a roan mare, and that he (plaintiff) gave $60.00 as boot between said horse and the roan mare. But the evidence of James S. Way is corrobarative of the evidence of Knapp in this respect expressly, and substantially as to another important matter testified to by said Knapp.

It does not appear that plaintiff ever demanded payment of said bond from the time Knapp received it back in 1862 from Noel until he brought this suit, or perhaps shortly before. Plaintiff delayed bringing this suit for seven years after Knapp received said bond back; and it is not claimed that he ever instituted any other proceeding legal or equitable in relation to said bond prior to the commencement of this suit. Why this long delay on the part of the plaintiff in these respects, if he in fact regarded said bond as his property, and not as the property of the said Knapp? As before stated no evidence is filed impeaching the general character of said Knapp or said Way or said Ford for truth and veracity. The plaintiff has failed to testify to, or prove material facts and matters which it was clearly in his power to testify to or prove by others, if they existed. The preponderance and weight of the evidence, as the case is presented to us by the record, and especially when considered in connec-

tion with the plaintiff's apparent laches in bringing this suit, or any other, for the recovery of said bond or its value is in my judgment and conscience against the plaintiff's claim of right, legal or equitable, to said bond even in the hands of the defendant, Knapp, if it had been there, at the time this suit was brought. Our duty requires us to decide cases according to the law and facts, as they are made and presented to us and appear by the record submitted for our judgment and decision, according to the best of our judgment and belief. This duty is not unfrequently an unpleasant one especially in deciding questions of fact where the evidence is really conflicting as to material facts involved in the case, and sometimes also where it is only apparently conflicting. Often conflicts in the testimony of honest witnesses and parties to suits are occasioned by forgetfulness from lapse of time, mistakes, misunderstandings, &c., and the known frailty of human nature and the human memory, and sometimes by corruption and fraudulent purposes. In the case at bar in so far as there is either real or only apparent conflict in the evidence of parties or witnesses as to the matters of fact I have decided, I am disposed to throw the mantle of charity over them and attribute such conflicts whether real or only apparent to mistake or forgetfulness rather than to corrupt perjury.

The view I have taken of this case renders it unnecessary to consider other questions of law and fact discussed before us on another branch of the case, they having become immaterial.

The plaintiff, by his counsel, claims that the court below erred in not suppressing the depositions of the defendants. I see nothing in the record to show that the court erred in not suppressing the depositions of the defendants or any of the depositions. If any such error exists, it does not appear by the record as far as I have been able to discover.

For the foregoing reasons there is error in the decree of the circuit court of the county of Greenbrier rendered

1879
Special Term.

Brown
v.
Martin *et al.*

in this cause on the 31st day of October, 1877, and it must therefore be reversed and annulled and the appellee, Tinsley Brown, pay to the appellant, O. C. Martin, his costs about the prosecution of his appeal and *supersedeas* in this court expended.   And this Court proceeding to render such decree in this cause as the said circuit court should have rendered, it is adjudged, ordered and decreed, that the plaintiff's bills be dismissed and that the plaintiff do pay to the defendant, O. C. Martin, his costs expended about the defense of this suit in the circuit court of the county of Greenbrier.

JUDGES GREEN AND JOHNSON CONCURRED.

DECREE REVERSED.